## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DARAN COHN,            :
        *Plaintiff*        :      **CIVIL ACTION**
           :
     v.            :
           :
PENNSYLVANIA STATE UNIV.,   :      **NO. 19-2857**
        *Defendant*      :

**FILED**
FEB 1 2 2020
KATE BARKMAN, Clerk
By_____ Dep. Clerk

## MEMORANDUM

PRATTER, J.                                               FEBRUARY 12, 2020

Daran Cohn[1] brings this suit against Pennsylvania State University for its alleged unlawful

actions concerning Ms. Cohn's enrollment in its Physician Assistant Program. She poses a number

of different claims and theories. She alleges that Penn State failed to provide her the reasonable

accommodations she needed as an individual suffering with Attention Deficit Hyperactivity

Disorder and anxiety. Ms. Cohn also asserts that Penn State breached a contract when it allegedly

failed to follow its own policies and student handbook. Finally, Ms. Cohn's promissory estoppel

and misrepresentation claims arise from Penn State's communications concerning Ms. Cohn's

graduation eligibility and trajectory.        ENT'D FEB 1 3 2020

Penn State moves to dismiss Ms. Cohn's claims, some entirely and others partially. For

the reasons set forth in this Memorandum, the Court dismisses Ms. Cohn's claims alleging a

violation of Title III of the Americans with Disabilities Act (ADA), breach of contract, and

promissory estoppel. Ms. Cohn's claims alleging intentional and/or negligent misrepresentation

---

[1]      Ms. Cohn proceeded *pro se* in initially filing this suit and in defending against Penn State's motion to dismiss. On February 6, 2020, the Court received notification that Ms. Cohn retained counsel. "An amended] complaint drafted by a *pro se* litigant must be held to a less exacting standard than a complaint drafted by trained counsel." *Lopez v. Brown*, No. 04-6267, 2005 WL 2972843, at *2 (D.N.J. Nov. 4, 2005) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Without regard to Ms. Cohn's recent retention of counsel, the Court holds Ms. Cohn's amended complaint to the less exacting *pro se* standard.

and violations of Title II of the ADA and § 504 of the Rehabilitation Act survive this motion to dismiss.

<h2 style="text-align:center">BACKGROUND</h2>

## I. Penn State's Physician Assistant Program, Student Handbook, and Financial Aid Satisfactory Academic Policy

Ms. Cohn alleges that Penn State is a public university and place of public accommodation which receives federal funding. Penn State offers a two-year graduate Physician Assistant Program. Students enrolled in the Program must complete three semesters of classes during their first year of the Program and three semesters of clinical rotations during their second year. Each year of enrollment in the Program costs around $60,000.

Penn State has a Financial Aid Satisfactory Academic Policy and a student handbook pertaining to the Program. Ms. Cohn alleges that the policy and student handbook require Penn State "to take various measures to assist students and to prevent them from incurring student debt if they are not progressing through the program." Am. Compl. at ¶ 37 (Doc. No. 3).

Pursuant to the student handbook, students cannot proceed to the clinical year if they do not maintain good academic standing. If a student takes a leave of absence, the student handbook states that Penn State's Academic Review Committee must approve an action plan to assist the student upon his or her return from leave. The student handbook also provides that Penn State must make student grades available on an electronic database to keep students apprised of their academic standing.

Under the Financial Aid Satisfactory Academic Policy, Penn State may not issue financial aid to a student who has failed a course or is otherwise not in good academic standing. Rather, the student must retake the course and receive a passing grade before Penn State will issue additional student aid.

2

## II. Ms. Cohn's Enrollment and the Summer 2015, Fall 2015 and Spring 2016 Semesters[2]

Penn State accepted Ms. Cohn into its Program in or around 2015. Ms. Cohn enrolled in the Program during the summer of 2015. Ms. Cohn is an individual with disabilities who suffers from Attention Deficit Hyperactivity Disorder and anxiety. Ms. Cohn alleges that with reasonable accommodations, she is qualified to participate in the Program. Before Ms. Cohn began her first semester, she notified Penn State that she had disabilities which required reasonable accommodations. She also provided medical documentation concerning her disabilities. Ms. Cohn alleges that despite its knowledge that accommodations were necessary, Penn State neither engaged in an interactive process with her nor provided her any accommodations during her first, second, and third semesters.

During Ms. Cohn's first semester, she failed one course, earned a grade point average below a 3.0., and was placed on academic probation. Ms. Cohn asserts that she was not in good academic standing after her first semester. Ms. Cohn alleges that because she failed a course and maintained a grade point average below 3.0, Penn State was barred from awarding her additional student loans until she retook the course she failed and improved her grade point average. Penn State, however, continued issuing Ms. Cohn student loans.

By the end of the 2015-2016 academic year, Ms. Cohn was still not in good academic standing. Penn State nevertheless allowed her to progress to the clinical portion of the Program.

---

[2]     Pursuant to Ms. Cohn's amended complaint, the Court understands the academic year to begin during the summer semester and end during the spring semester.

## III. Ms. Cohn's Summer 2016, Fall 2016, and Spring 2017 Semesters

Ms. Cohn generally alleges that Penn State discriminated against her throughout the entire 2016-2017 academic year by denying her, based on her disabilities, the same educational opportunities as her peers.

Ms. Cohn began the clinical portion of the Program in the summer of 2016. Ms. Cohn alleges that Penn State did not provide her accommodations during the summer 2016 semester despite knowing that she needed to be accommodated. Ms. Cohn asserts that she struggled academically during the summer 2016 due to Penn State's failure to provide her any accommodations. Midway through this semester, Penn State allegedly forced Ms. Cohn to take a leave of absence based on her disabilities. Ms. Cohn accordingly did not finish one of her courses during this semester. Ms. Cohn returned from leave for the last of her rotations during the summer 2016 semester. Ms. Cohn asserts that Penn State violated its own policy when Penn State's Academic Review Committee did not approve an action plan to facilitate her return from leave.

Penn State then dismissed Ms. Cohn from the Program based on her summer 2016 grades, her academic probation during the 2015-2016 academic year, and her failure to maintain good academic standing. Ms. Cohn paid her tuition for the fall 2016 semester and began her fall 2016 coursework prior to her dismissal. After discussing the dismissal with Penn State's staff, Penn State permitted Ms. Cohn to stay in the Program. Ms. Cohn alleges that Penn State's staff "represented" to her that her academic probation during the 2015-2016 academic year "would not affect her ability to graduate from the Program." *Id.* at ¶ 69.

Recognizing that Ms. Cohn qualifies for accommodations under the ADA and § 504 of the Rehabilitation Act, Penn State agreed to provide Ms. Cohn accommodations sometime during the summer of 2016. Penn State "represented" that it would provide Ms. Cohn (1) a quiet, isolated

4

setting for exams; (2) a quiet, isolated setting for taking notes during clinical rotations; (3) clinical placements near her home and support network; and (4) a revised clinical schedule to accommodate her disabilities. *Id.* at ¶ 71. Ms. Cohn asserts that Penn State sporadically provided a quiet, isolated setting for exams and completely failed to provide the latter three accommodations. Ms. Cohn asserts that Penn State's alleged failure to accommodate her denied her an equal educational opportunity and exacerbated her anxiety.

Apart from paying for and beginning course work, Ms. Cohn does not allege any facts concerning her fall 2016 semester. Ms. Cohn alleges that during her spring 2017 semester, Penn State did not make her grades available on an electronic database nor did it keep Ms. Cohn apprised of her academic standing. Because Ms. Cohn believed that she achieved satisfactory grades during the spring 2017 semester, she continued incurring student loans and pursuing her Physician Assistant degree.

### IV. Ms. Cohn's Summer 2017, Fall 2017, and Spring 2018 Semesters

Ms. Cohn alleges that Penn State continued to discriminate against her by denying her the same educational opportunities as her peers throughout the 2017-2018 academic year. Ms. Cohn alleges that Penn State forced her to take a second leave of absence based on her disabilities during the summer of 2017. Before Ms. Cohn took the leave of absence, Penn State's staff "represented" to her that she would be eligible for graduation in December 2017 if she returned from leave in the fall of 2017 and achieved a 3.0 grade point average during that semester. Relying on this representation, Ms. Cohn returned from leave in fall 2017 and incurred additional student loans. Penn State's Academic Review Committee did not approve an action plan to facilitate her transition back from leave.

Penn State allegedly again failed to consistently provide Ms. Cohn accommodations during the fall of 2017. Ms. Cohn asserts that Penn State again only sporadically provided her a quiet, isolated setting for exams and failed to provide her a quiet, isolated setting for taking notes during clinical rotations; appropriately select and arrange her clinical placements; and revise her clinical schedule. Ms. Cohn claims that she raised these failures with Penn State's staff to no avail. Ms. Cohn asserts that Penn State's alleged failure to accommodate her denied her an equal educational opportunity and exacerbated her anxiety.

Ms. Cohn alleges that Penn State failed to make her grades available to her on an electronic database and keep her apprised of her academic standing for most of the fall 2017 semester. Penn State's staff eventually disclosed Ms. Cohn's grades in December 2017. Penn State's staff informed Ms. Cohn that although she achieved a 3.0 grade point average during the fall 2017 semester, her cumulative grade point average fell below 3.0. Penn State's staff informed Ms. Cohn that unless she raised her cumulative grade point average above 3.0 during the spring 2018 semester, she would be dismissed from the Program and unable to graduate.

Ms. Cohn asserts that Penn State only sporadically provided her a quiet, isolated setting for exams and otherwise failed to provide her other accommodations during the spring 2018 semester. Ms. Cohn again raised Penn State's alleged failures to its staff to no avail. Ms. Cohn asserts that Penn State "effectively dismissed" her from the Program near the end of the spring 2018 semester. *Id.* at ¶ 104. Ms. Cohn asserts that Penn State dismissed her "in part because of her academic probation in 2015 and 2016, even though it had previously promised her that the probation would not impact her ability to graduate. *Id.* at ¶ 105. Ms. Cohn contends that her disabilities motivated Penn State's decision to dismiss her from the Program and its actions leading up to her dismissal.

6

## PROCEDURAL HISTORY

Ms. Cohn filed her initial complaint against Pennsylvania State University on June 28, 2019. Ms. Cohn asserts various civil rights and state law claims in connection with her enrollment and participation in Penn State's Physician Assistant Program. Prior to serving Penn State her initial complaint, Ms. Cohn filed an amended complaint on August 1, 2019. Ms. Cohn served Penn State the initial and amended complaint on August 29, 2019. The parties agreed to toll the statute of limitations from May 6, 2019 to June 30, 2019.

Ms. Cohn makes a variety of claims against Penn State. They are:

- Count I: Violations of § 504 of the Rehabilitation Act

- Count II: Violations of Title II of the Americans with Disabilities Act

- Count III: Violations of Title III of the Americans with Disabilities Act

- Count IV: Breach of Contract

- Count V: Promissory Estoppel

- Count VI: Negligent and/or Intentional Misrepresentation

Penn State filed a motion to dismiss raising various challenges to all of Ms. Cohn's claims.

## LEGAL STANDARD

At the outset, the Court notes that Ms. Cohn's *pro se* pleading must be "liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Bieros v. Nicola*, 839 F. Supp. 332, 334 (E.D. Pa. 1993). Due to an "understandable difference in legal sophistication," *pro se* litigants such as Ms. Cohn are held to a "less exacting standard" than trained counsel. *Lopez v. Brown*, No. 04-6267, 2005 WL 2972843, at *2 (D.N.J. Nov. 4, 2005) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). The Court stands prepared to "apply the applicable law, irrespective

of whether the *pro se* litigant has mentioned it by name." *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) (internal citation omitted).

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. Although Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted) (alteration in original).

To survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The question is not whether the claimant "will ultimately prevail . . . but whether [her] complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (citation and internal quotation marks omitted). Thus, assessment of the sufficiency of a complaint is "a context-dependent exercise" because "[s]ome claims require more factual explication than others to state a plausible claim for relief." *W. Pa. Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010).

In evaluating the sufficiency of a complaint, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). The Court must "accept all allegations as true." *ALA, Inc. v. CCAIR,*

8

*Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *see also Twombly*, 550 U.S. at 555 (stating that courts must "assum[e] that all the allegations in the complaint are true (even if doubtful in fact)"). A court must also accept as true all reasonable inferences emanating from the allegations and view those facts and inferences in the light most favorable to the nonmoving party. *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989); *see also Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010).

However, that admonition does not demand that the Court ignore or discount reality. The Court "need not accept as true unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000) (citations and internal quotation marks omitted), and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678; *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (explaining that a court need not accept a plaintiff's "bald assertions" or "legal conclusions" (citations omitted)). If a claim "is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008).

## DISCUSSION

Ms. Cohn brings failure-to-accommodate claims under the ADA and Rehabilitation Act, a breach of contract claim, a promissory estoppel claim, and a negligent and/or intentional misrepresentation claim against Penn State. The Court will address Penn State's challenges to Ms. Cohn's claims in turn.

# I. Penn State's Statute of Limitations Arguments

Penn State argues that Ms. Cohn's claims alleging violations of Titles II and III of the ADA and § 504 of the Rehabilitation Act and common law misrepresentation are in part barred on statute of limitations grounds. Specifically, Penn State asserts that all actions occurring before May 6, 2017 are time-barred and thus cannot support her claims.

Although the language of Rule 8(c) of the Federal Rules of Civil Procedure does not authorize a defendant to raise a statute of limitation defense in the context of a Rule 12(b)(6) motion to dismiss, "an exception is made where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994), *abrogated on other grounds by Rotkiske v. Klemm*, 890 F.3d 422, 428 (3d Cir. 2018) (citations omitted); *see Datto v. Harrison*, 664 F. Supp. 2d 472, 482 (E.D. Pa. 2009). When evaluating the statute of limitations applicable to a claim, the Court is limited to reviewing "the complaint, the exhibits attached to the complaint, and matters of public record." *Datto*, 664 F. Supp. 2d at 482.

## A. Ms. Cohn's ADA and § 504 Claims

The Court first considers the statute of limitations applicable to Ms. Cohn's ADA and Rehabilitation Act claims. As discussed below, Ms. Cohn's ADA claim brought under Title III is dismissed on separate grounds. Accordingly, the Court focuses on Ms. Cohn's claims brought under Title II of the ADA and § 504 of the Rehabilitation Act.

Neither the ADA nor § 504 of the Rehabilitation Act include express statutes of limitations. *Disabled in Action of Pennsylvania v. Se. Pennsylvania Transp. Auth.*, 539 F.3d 199, 208 (3d Cir. 2008). When determining the applicable statute of limitations for such claims, courts borrow the statute of limitations from the most analogous state law applicable in the state in which they sit.

*North Star Steel Co. v. Thomas*, 515 U.S. 29, 34 (1995); *see also Disabled in Action*, 539 F.3d at 208 (noting that the default four-year statute of limitations for federal statutes does not apply to the ADA or the Rehabilitation Act). Courts have applied Pennsylvania's two-year statute of limitations for personal injury claims to ADA and § 504 claims. *See Disabled in Action*, 539 F.3d at 208; *see Datto*, 664 F. Supp. 2d at 482 (applying Pennsylvania's two-year personal injury statute of limitations to plaintiff's ADA and § 504 claims concerning his university's alleged failure to accommodate him during his enrollment in its M.D./Ph.D. program and his eventual dismissal from the program).

Federal law, however, governs when federal causes of action accrue. *Romero v. Allstate Corp.*, 404 F.3d 212, 221 (3d Cir. 2005). "A federal discrimination claim accrues and the applicable statute of limitations begins to run when the plaintiff knows or has reason to know of the injury that is the basis of the action." *Saylor v. Ridge*, 989 F. Supp. 680, 686 (E.D. Pa. 1998) (citing *Toney v. U.S. Healthcare, Inc.*, 840 F. Supp. 357, 359 (E.D. Pa. 1993)); *see Disabled in Action*, 539 F.3d at 209 ("'[I]n the absence of a contrary directive from Congress,' we apply the 'federal discovery rule,' which dictates that a federal cause of action accrues 'when the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim.'") (quoting *Romero*, 404 F.3d at 222).

As noted, the parties agreed to toll the statute of limitations from May 6, 2019 through June 30, 2019. Thus, the two-year statute of limitation would bar Ms. Cohn's reliance on alleged acts that she had reason to discover prior to May 6, 2017. Ms. Cohn had reason to know of her injury when Penn State allegedly failed to appropriately provide her reasonable accommodations. Ms. Cohn alleges that Penn State failed to provide her accommodations during the summer 2015, fall 2015, spring 2016, summer 2016, fall 2017, and spring 2018 semesters.

11

Because the summer 2015, fall 2015, and summer 2016 semesters predated May 6, 2017, Ms. Cohn's allegations regarding these semesters are time-barred by the two-year statute of limitations unless Ms. Cohn's equitable estoppel argument discussed below is viewed as paramount. Ms. Cohn, however, also alleges that Penn State acted unlawfully after May 6, 2017 during the fall 2017 and spring 2018 semesters. Penn State's alleged failure to accommodate Ms. Cohn during the fall 2017 and spring 2018 semesters are instances of separate and discrete acts considered apart from Penn State's actions taken during the summer 2016 semester. *See Datto*, 664 F. Supp. 2d at 485 (finding a university's decision to dismiss a student from its M.D./Ph.D. program and its subsequent decision to not reinstate the student into the program to be "separate and discrete acts" afforded their "own statute of limitations clock"). Therefore, Penn State's actions completed after May 6, 2017 supporting Ms. Cohn's Title II and § 504 claims survive this motion to dismiss, without regard to the application of Ms. Cohn's equitable estoppel argument.

In sum, the Court does not dismiss Ms. Cohn's claims brought under Title II of the ADA and § 504 of the Rehabilitation Act to the extent they concern Penn State's actions occurring after May 6, 2017. In Section I.C., the Court further assesses the application of equitable tolling principles concerning the actions Penn State took before May 6, 2017.

**B. Ms. Cohn's Misrepresentation Claim**

The Court next considers the statute of limitations applicable to Ms. Cohn's misrepresentation claim. Penn State argues that statements made prior to May 6, 2017 are time-barred.[3]

---

[3]     In doing so, Penn State incorrectly asserts in its memorandum in support of it motion to dismiss that Ms. Cohn's misrepresentation claim is "based on statements purportedly made to Plaintiff in 2015, 2016, and 2017." Def.'s Memo. in Supp. Mot. to Dismiss at 23 (Doc. No. 5-2). Ms. Cohn's amended complaint, however, focuses on misrepresentations allegedly made "in 2016, 2017, and 2018." Am. Compl. at ¶ 201 (Doc. No. 3).

12

Pennsylvania's two-year statute of limitation also applies to Ms. Cohn's intentional and/or negligent misrepresentation claim. 42 Pa. C.S.A. § 5524; *see also Toy v. Metro. Life Ins. Co.*, 863 A.2d 1, 9 (Pa. Super. Ct. 2004). Under Pennsylvania law, a statute of limitation generally "begins to run when the plaintiff's cause of action arises or accrues." *Cooper v. Sirota*, 37 F. App'x 46, 49 (3d Cir. 2002) (citing *Leedom v. Spano*, 647 A.2d 221, 226 (Pa. Super. Ct. 1994)). "[T]he cause of action accrues on the date of injury" in a torts case. *Id.* (citing *Stroback v. Camaioni*, 674 A.2d 257, 262 (Pa. Super. Ct. 1996)).[4]

Here, Ms. Cohn alleges that "[i]n 2016, 2017, and 2018, [Penn State] made misrepresentations to Ms. Cohn that she was in good academic standing and that she would be able to graduate from the Physician Assistant Program." Am. Compl. at ¶ 201 (Doc. No. 3). In her amended complaint, Ms. Cohn specifically alleges that Penn State misrepresented to her (1) in 2016 that her academic probation would not affect her ability to graduate from the Program and (2) sometime prior to her summer 2017 leave of absence "that if [Ms. Cohn] returned from leave in fall 2017 and achieved a 3.0 GPA in fall 2017, she would be eligible for graduation in December 2017." *Id.* at ¶ 85. According to Ms. Cohn's amended complaint, these statements constitute misrepresentations because (1) Penn State did, in fact, dismiss her "in part because of her academic probation in 2015 and 2016," *id.* at ¶ 105, and (2) Ms. Cohn was required to obtain a cumulative

---

[4]      In Pennsylvania, "the discovery rule applies to toll the statute of limitations where an injured party is unable 'despite the exercise of reasonable diligence, to know that he has been injured and by what cause.'" *First Sealord Sur. v. Durkin & Devries Ins. Agency*, 918 F. Supp. 2d 362, 380 (E.D. Pa. 2013) (quoting *Drelles v. Mfr. Life. Ins. Co.*, 881 A.2d 822, 831 (Pa. Super. 2005)). The discovery rule tolls the statute of limitations in cases "where a party neither knows nor reasonably should have known of [her] injury and its cause at the time [her] right to institute suit arises." *Fine v. Checcio*, 870 A.2d 850, 859 (Pa. 2005). "When a court is presented with the assertion that the discovery rule applies, it must address the ability of the damaged party, exercising reasonable diligence, to know that he has been injured and by what cause.'" *First Sealord Sur.*, 918 F. Supp. 2d at 380 (quoting *Drelles*, 881 A.2d at 831). Because the Court determines that Ms. Cohn's misrepresentation claim survives this motion to dismiss on other grounds and because the Court was not presented with the assertion that the discovery rule applies, there will be no analysis of the discovery rule here.

grade point average above 3.0 to be eligible to graduate, not a 3.0 grade point average during only the fall 2017 semester.

Misrepresentations made in 2016 predate the two-year statute of limitations period, whereas misrepresentations made in 2018 fall within the two-year period. As for the 2017 misrepresentations, Ms. Cohn asserts that Penn State misrepresented material information sometime before she took her leave of absence during the summer 2017 semester. Depending on when the alleged misrepresentations were actually made, the 2017 misrepresentations may also fall within the two-year period. Excluding Ms. Cohn's equitable estoppel argument discussed below, the two-year statute of limitations would bar Ms. Cohn's misrepresentation claim to the extent it concerns actions predating May 6, 2017. The two-year statute of limitations does not, however, bar Ms. Cohn's allegations concerning actions Penn State took after May 6, 2017.

## C. Ms. Cohn's Equitable Estoppel Argument

Ms. Cohn argues that Penn State should be equitably estopped from raising its statute of limitations challenges concerning actions taken prior to May 6, 2017. Ms. Cohn's equitable estoppel argument focuses on her reliance on Penn State's alleged misrepresentations (1) published in its policies and student handbook and (2) communicated by its staff concerning her graduation eligibility and trajectory. Ms. Cohn also asserts for the first time in her response:

> Through Ms. Cohn's legal counsel, Penn State represented that Ms. Cohn could still earn her degree with the completion of "a few outstanding requirements," even though the Program had already withdrawn her enrollment. Ms. Cohn found out that this was not true in December 2018, as Penn State had withdrawn her enrollment in December of the previous year . . . . Prior legal counsel delayed filing of this lawsuit by misleading Ms. Cohn about the relevant law and statutes of limitation applicable to her case. Ms. Cohn's reliance on the misrepresentations made to her by Penn State and her previously legal counsel caused the delay in filing this lawsuit.

Pl.'s Resp. Mot. to Dismiss at ¶¶ 101-01, 103-05 (Doc. No. 17).

14

Penn State argues that Ms. Cohn fails to plead sufficient facts asserting her equitable estoppel argument in her amended complaint and also argues that this means the Court ought not consider the assertions included in Ms. Cohn's response briefing that are not pleaded in her amended complaint. "[W]hile a court may entertain a motion to dismiss on statute of limitations grounds, it may not allocate the burden of invoking" a defense to a statute of limitations argument "in a way that is inconsistent with the rule that a plaintiff is not required to plead, in a complaint, facts sufficient to overcome an affirmative defense." *Schmidt v. Skolas*, 770 F.3d 241, 251 (3d Cir. 2014) (citations omitted). Here, Penn State is urging the Court to do just that.

The Court first considers the application of equitable principles related to tolling the statute of limitations applicable to Ms. Cohn's federal failure-to-accommodate claims.[5] Equitable tolling of a plaintiff's federal claims may arise "where a defendant actively misleads a plaintiff with respect to her cause of action." *Lake v. Arnold*, 232 F.3d 360, 370 n.9 (3d Cir. 2000). *But see Katz v. Nat'l Bd. of Medical Examiners*, 751 F. App'x 231, 236 (3d Cir. 2018) (denying equitable tolling of student's ADA and § 504 claims on the basis that the denial of his request for accommodations was fraudulently concealed because the student was still "on notice that he could have a potential discrimination suit" within the two-year statute of limitations period); *United States v. Midgley*, 142 F.3d 174, 179 (3d Cir. 1998) ("Federal courts invoke the doctrine of equitable tolling 'only sparingly,' and will not toll a statute because of 'what is at best a garden variety claim of excusable neglect' on the part of the defendant.") (citations omitted).

Although here the applicability of equitable tolling is not evident on the face of the amended complaint, Ms. Cohn "also does not plead facts that unequivocally show" that such a

---

[5]     In response to Penn State's statute of limitation arguments, Ms. Cohn asserts an equitable estoppel argument applying Pennsylvania law regarding both her federal failure-to-accommodate and common law misrepresentation claim. The Court construes Ms. Cohn's response to assert an equitable tolling argument frequently considered when analyzing federal claims such as federal failure-to-accommodate claims.

15

principle "does *not* apply." *Schmidt*, 770 F.3d at 251 (emphasis added). In the absence of allegations demonstrating that such a doctrine should not apply here, the Court declines to dismiss any part of Ms. Cohn's Title II and § 504 claims at the motion to dismiss stage, mindful once again of the indulgences extended to *pro se* litigants.

The Court next assesses Ms. Cohn's equitable estoppel argument concerning her state law misrepresentation claim. Under Pennsylvania law, the doctrine of equitable estoppel "applies where, because of something that has been done, a party is denied the right to plead or prove an otherwise important fact[.]" *Nesbitt v. Erie Coach Co.*, 204 A.2d 473, 476 (Pa. 1964). "[I]f through fraud or concealment the defendant causes the plaintiff to relax his vigilance or deviate from his right on inquiry, the defendant is estopped from invoking the bar of limitation of action." *Id.* at 475 (citation omitted). The doctrine may be applied "where the party asserting estoppel established by clear, precise and unequivocal evidence (1) that the party against whom the doctrine is sought to be asserted intentionally or negligently misrepresented a material fact, knowing or with reason to know that the other party would justifiably rely on the misrepresentation, (2) that the other party acted to his or her detriment by justifiably relying on the misrepresentation, and (3) that there was no duty of inquiry on the party seeking to assert estoppel." *Homart Dev. Co. v. Sgrenci*, 662 A.2d 1092, 1099-1100 (Pa. Super. Ct. 1995) (en banc). It is the jury's duty to determine whether the "alleged remarks were made" and for the Court to decide whether those remarks constitute an application of the doctrine. *Nesbitt*, 204 A.2d at 476. "In order for the doctrine of estoppel to be applied in bar of the statute of limitations, fraud or concealment must necessarily be established." *Id.* This requires demonstrating "fraud in the broadest sense which includes an unintentional deception." *Id.* at 476.

16

As a preliminary matter, the Court rejects Ms. Cohn's argument that her prior legal counsel's alleged misrepresentations concerning the statutes of limitations applicable to her claims supports equitable estoppel. Notably, Ms. Cohn's allegations focus on alleged misrepresentations made *by* her prior counsel, *not* Penn State. Rather, the Court approaches this issue from a different angle. As noted, these allegations are also exclusively asserted in Ms. Cohn's response, not her amended complaint. Although Ms. Cohn does not plead any facts asserting that Penn State misled her regarding the time frame in which she could bring her misrepresentation claim, Ms. Cohn also does not plead any facts unequivocally demonstrating that Penn State did not make such misrepresentations. Again, the Court declines to require Ms. Cohn to plead facts in her complaint to overcome an affirmative defense. *Schmidt*, 770 F.3d at 251 (citations omitted).

Moreover, there is a rational possibility that Ms. Cohn's alleged reliance on Penn State's misrepresentations supporting her claim may have denied Ms. Cohn the right to plead important facts concerning this claim. Ms. Cohn alleges that Penn State first made a misrepresentation sometime in 2016. Am. Compl. at ¶ 201 (Doc. No. 3). Despite Penn State's allegedly contradictory misrepresentations, Ms. Cohn was "effectively dismissed" at the end of the spring 2018 semester. *Id.* at ¶ 104. Accepting as true all reasonable inferences emanating from Ms. Cohn's allegations, Ms. Cohn may have not realized that some of the alleged misrepresentations supporting her claim were in fact misrepresentations until the two-year statute of limitations already passed. At this early stage, the Court therefore refrains from dismissing any part of Ms. Cohn's misrepresentation claim.[6]

---

[6]      In the event the Court determined that Ms. Cohn's contract claim survived this motion to dismiss, Penn State alternatively argued that Ms. Cohn's misrepresentation claim should be barred by Pennsylvania's gist of the action doctrine. As noted below, the Court dismisses Ms. Cohn's contract claim. The Court therefore does not address Penn State's gist of the action argument, and Penn State does not otherwise challenge Ms. Cohn's misrepresentation claim.

17

## II. Ms. Cohn's ADA Claim Brought Under Title III

In addition to its statute of limitations argument, Penn State argues that it is improper to bring a Title III claim against a public university. To state a claim under Title III of the ADA, a plaintiff "must allege that (1) [s]he was discriminated against on the basis of disability; (2) in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation; (3) by any person who owns, leases (or leases to), or operates a place of public accommodation." *Bowers v. Nat'l Collegiate Athletic Ass'n*, 9 F. Supp. 2d 460, 480 (D.N.J. 1998) (collecting cases); *see* 42 U.S.C. § 12182(a) ("No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.").

"Title III of the ADA applies to private entities providing public accommodations, however, not to public entities." *DeBord v. Bd. of Educ. of Ferguson-Florissant Sch. Dist.*, 126 F.3d 1102, 1106 (8th Cir. 1997) (citing 42 U.S.C. §§ 12181-82; *Sandison v. Michigan High School Athletic Ass'n, Inc.*, 64 F.3d 1026, 1036 (6th Cir. 1995)). The ADA defines a "public entity" as, in part, "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1)(b). A "private entity" is defined as "any entity other than a public entity." *Id.* at § 12181(6). Notably, only private schools, not public schools, are subject to Title III of the ADA. *See id.* at § 12181(7); 28 C.F.R. § 36.104; *see DeBord*, 126 F.3d at 1106.

Here, Ms. Cohn alleges that Penn State is a "public university," a "state entity," and "a place of public accommodation." Am. Compl. at ¶¶ 6-7; 158 (Doc. No. 3). Because Ms. Cohn's

18

amended complaint alleges that Penn State is a public university, she cannot pursue a Title III claim.

## III.   Ms. Cohn's Breach of Contract Claim

Ms. Cohn brings a breach of contract claim against Penn State for purportedly violating the Program's student handbook and the Financial Aid Satisfactory Academic Policy. The defendants argue that the provisions of the student handbook and policy do not create an enforceable contract between Ms. Cohn and Penn State.

To prove a breach of contract claim, "Pennsylvania law requires that a plaintiff allege: '(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages.'" *Hopkins v. GNC Franchising, Inc.,* 288 F. App'x 871, 873 (3d Cir. 2008) (quoting *CoreStates Bank, N.A. v. Cutillo,* 723 A.2d 1053, 1058 (Pa. Super. 1999)).[7]

Courts in Pennsylvania have "declined to construe the student handbook of a public university as a contract between the public university and the student." *Tran v. State Sys. of Higher Educ.*, 986 A.2d 179, 183 (Pa. Commw. Ct. 2009) (citing *Crabtree v. California Univ. of Pennsylvania*, 606 A.2d 1239, 1240 n. 3 (Pa. Commw. Ct. 1990)); *see Borrell v. Bloomsburg Univ.*, 955 F. Supp. 2d 390, 408 (M.D. Pa. 2013); *Bradshaw v. Pennsylvania State Univ.*, No. 10-4839, 2011 WL 1288681, at *2 (E.D. Pa. Apr. 5, 2011) ("If Pennsylvania State University is a public university, then the plaintiff cannot state a contract claim pursuant to a university handbook."); *cf. Reardon v. Allegheny College*, 926 A.2d 477, 481 (Pa. Super. Ct. 2007) ("The relationship between a *privately funded* college and a student has traditionally been defined in this

---

[7]      The courts in this District often split the first factor of the Third Circuit Court of Appeals' test into two parts: "(1) the existence of a valid and binding contract to which the plaintiff and defendants were parties [and] (2) the contract's essential terms." *Flynn v. LaSalle Univ.,* No. 97-4542, 1998 WL 599512, at *4 (E.D. Pa. Sept. 9, 1998) (citing *Gundlach v. Reinstein,* 924 F. Supp. 684, 688 (E.D. Pa. 1996)). The courts also add an additional factor, "that plaintiff complied with the contract's terms," making the test for a breach of contract a five-part test. *Id.*

19

Commonwealth as strictly contractual in nature.") (citations omitted) (emphasis added). Ms. Cohn alleges that Penn State is a public university. Because Ms. Cohn's breach of contract claim is based on a public university's alleged breach of its student handbook and policy[8] provisions, her breach of contract claim similarly fails under the case law.

In her response, Ms. Cohn suggests that the student handbook should represent "at least an implied contract between the student and the Program." Pl.'s Resp. Mot. to Dismiss at 14 (Doc. No. 17). "A contract implied in fact has the same legal effect as any other contract. It differs from an express contract only in the manner of its formation." *Ingrassia Const. Co., Inc. v. Walsh*, 486 A.2d 478, 483 n.7 (Pa. Super. Ct. 1984). Whereas "[a]n express contract is formed by either written or verbal communication[,] [t]he intent of the parties to an implied in fact contract is 'inferred from their acts in light of the surrounding circumstances.'" *Id.* (quoting *Cameron v. Eynon*, 3 A.2d 423, 424 (1939)). A party may only allege the existence of both an express contract and an implied contract if the terms of the contracts differ. *In re Penn Cent. Transp. Co.*, 831 F.2d 1221, 1229 (3d Cir. 1987) ("[N]o implied-in-fact contract can be found when . . . the parties have an express agreement dealing with the same subject.") (citations omitted); *see ITT Fed. Support Serv. v. United States*, 531 F.2d 522, 528 n. 12 (1976). Here, Ms. Cohn's breach of contract claim is based entirely on Penn State's alleged failure to follow written provisions and policies. She does not allege any additional facts concerning an additional, unrelated implied contract.

To the extent Ms. Cohn's amended complaint contains any additional breach of contract allegations, they similarly fail. Ms. Cohn alleges that, in addition to failing to comply with its own policies, Penn State "otherwise breached its contractual duties" to her and that such "breaches were

---

[8]     It is unclear whether the policies Ms. Cohn relies on are all contained within the student handbook. Regardless, the same bar against holding public university's accountable for allegedly violating a policy published within a student handbook would necessarily apply to its alleged violation of its policy generally published outside of its student handbook. Ms. Cohn does not cite any case law that suggests otherwise.

material and caused Ms. Cohn to suffer damages." Am. Compl. at ¶¶ 183-84 (Doc. No. 3). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (2007). Ms. Cohn does not provide any allegations in her amended complaint demonstrating which additional contractual duties Penn State allegedly breached or how it breached such contractual duties. Accordingly, Ms. Cohn's assertion that Penn State "otherwise breached its contractual duties" fails. Am. Compl. at ¶ 183 (Doc. No. 3).

The Court therefore dismisses Ms. Cohn's breach of contract claim.

## IV.  Ms. Cohn's Promissory Estoppel Claim

Ms. Cohn brings a promissory estoppel claim against Penn State. Ms. Cohn asserts that because she relied on Penn State's promises in 2016 and 2017 that "she was on track to graduate," she continued the Program and assumed student loan debt. Am. Compl. at ¶ 186 (Doc. No. 3).

"Promissory estoppel is an equitable remedy traditionally used to enforce a promise in the absence of bargained-for consideration." *W. Chester Univ. Found. v. MetLife Ins. Co. of Conn.*, 259 F. Supp. 3d 211, 222 (E.D. Pa. 2017) (citing *Bull Int'l, Inc. v. MTD Consumer Grp., Inc.*, 654 F. App'x 80, 100 (3d Cir. 2016)); *see Cornell Narbeth, LLC v. Borough of Narbert*, 167 A.3d 228, 239 (Pa. Commw. Ct. 2017) ("[P]romissory estoppel provides an equitable remedy to enforce a 'contract-like promise that would be otherwise unenforceable under contract law principles.")) (quoting *Peluso v. Kistner*, 970 A.2d 530, 532 (Pa. Commw. Ct. 2009)). "Promissory estoppel allows the court to enforce a party's promise that is unsupported by consideration where (1) the promisor makes a promise that he reasonably expects to induce action or forbearance by the promisee, (2) the promise does induce action or forbearance by the promisee, (3) and injustice can only be avoided by enforcing the promise." *Carlson v. Arnot-Ogden Memorial Hosp.*, 918 F.2d

21

411, 416 (3d Cir. 1990) (citing *Cardmone v. Univ. of Pittsburgh*, 384 A.2d 1228, 1233. (Pa. Super. Ct. 1978)). "These factors are strictly enforced to guard against the 'loose application' of promissory estoppel.'" *Cornell Narbeth*, 167 A.3d at 239 (quoting *Peluso*, 970 A.2d at 533).

To establish a promissory estoppel claim, there must exist "an express promise between the promisor and the promise"—"a 'broad or vague implied promise' will be deemed insufficient." *MRO Corp. v. Humana Inc.*, 383 F. Supp. 3d 417, 424 (E.D. Pa. 2019); *see C & K Petroleum Prods., Inc. v. Equibank*, 839 F.2d 188, 192 (3d Cir. 1988) ("Promissory estoppel would be rendered meaningless if . . . detrimental reliance [was] based on the alleged existence of [] a broad and vague implied promise.") (citation omitted); *Constar, Inc. v. Nat'l Distribution Ctrs., Inc.*, 101 F. Supp. 2d 319, 324 (E.D. Pa. 2000) ("An implied promise is insufficient to support a claim for promissory estoppel."). Rather, the promise must indicate the intent of the parties with "'reasonable certainty.'" *MRO Corp.*, 383 F. Supp. 3d at 423 (citing *Ankerstjerne v. Schlumberger Ltd.*, No. 03-3607, 2004 WL 1068806, at *5 (E.D. Pa. May 12, 2004), *aff'd*, 155 F. App'x 48 (3d Cir. 2005)).

The Court concludes that Penn State's statements that Ms. Cohn "was on track to graduate" is not an express promise. Am. Compl. at ¶ 186 (Doc. No. 3). Penn State's update concerning Ms. Cohn's academic standing is not a promise, let alone an express promise. Informing a student that they are currently on track to graduate does not equate to promising that student that she or he will indeed graduate in the future. Therefore, the Court finds that Ms. Cohn's amended complaint, as alleged, fails to plead a plausible promissory estoppel claim.[9]

---

[9]     Because the Court dismisses Ms. Cohn's contract and promissory estoppel claims, the Court does not address Penn State's alternative argument that Ms. Cohn failed to properly plead damages relating to these claims.

## V. Penn State's Failure to Specify Declaratory Relief Argument

Finally, Penn State moves to dismiss Ms. Cohn's claims requesting declaratory relief. The counts asserting Ms. Cohn's § 504, ADA, breach of contract, and promissory estoppel claims all include demands for "declaratory judgment" without stating what in particular Ms. Cohn wishes to have the Court declare. Because the Court dismisses Ms. Cohn's breach of contract, promissory estoppel, and Title III claims, it instead focuses on Ms. Cohn's request for declaratory judgment contained within the counts setting forth her § 504 and Title II claims. In addition to requesting declaratory judgments, Ms. Cohn also requests all remedies available under § 504 of the Rehabilitation Act and the ADA "including but not limited to, damages as would fully compensate Ms. Cohn under the [applicable statute]; equitable relief, including removal from her academic record of the below-satisfactory grades that she received because of [Penn State's] violations, recognition of all course credits that she has obtained thus far, and discharge of her student loans; attorney's fees and litigation costs; and all other such relief that this Court deems appropriate." Am. Compl. at ¶¶ 135, 154.

Penn State's argument does not assert that the facts set forth in Ms. Cohn's amended complaint could never afford a grant of declaratory judgment. Rather, it takes issue with the nature of the declaratory relief Ms. Cohn requests. The Court rejects Penn State's argument that "ascribes a breadth to the Supreme Court's *Twombly* and *Iqbal* decisions that is not warranted by the language of those cases or, in fact, Federal Rule of Civil Procedure 8(a) itself." *Jones v. Francis*, No. 13-4562, 2013 WL 5603848, at *2 (D.N.J. Oct. 11, 2013). *Jones v. Francis*, No. 13-4562, 2013 WL 5603848 (D.N.J. Oct. 11, 2013), a case where the defendants similarly moved to dismiss a punitive damages demand in the plaintiff's complaint under Rule 12(b)(6), is particularly instructive. *Id.* at *2. In rejecting the defendants' argument, that Court explained:

As demonstrated in the standard of review section that accompanies this and every other opinion on a Rule 12(b)(6) motion, the "plausibility" pleading regime addresses the types of facts a plaintiff must allege to make out a cause of action, not the types of damages the alleged cause of action may eventually warrant. Indeed, nothing in *Twombly, Iqbal,* or their progeny refers to pleading requirements for damages requests at all; instead, the cases themselves analyze the well-pleaded facts exclusively in the context of the elements of the alleged cause of action. *See Iqbal,* 556 U.S. at 680, 687 ("Rule 8 does not empower respondent to plead the bare elements of his cause of action [for invidious discrimination] . . . and expect his complaint to survive a motion to dismiss."); *see also Malleus v. George,* 641 F.3d 560, 563 (3d Cir. 2011) ("a court must ... look[ ] at the well-pleaded components of the complaint and evaluat[e] whether all of the elements [a plaintiff must plead to state a claim] are sufficiently alleged"). In sum, once a civil complaint shows a claim to be "facially plausible," *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir. 2009), nothing in Rule 8 or its judicial gloss suggests, let alone requires, that this Court scrutinize the damages requested by plaintiff as redress for that claim. . . .

Were the Court to accept Defendants' argument, every request for damages, including standard fare like attorneys' fees or "such other relief as the Court may deem proper," . . . could be attacked at the motion to dismiss stage, on the theory that the facts alleged did not support a claim for such a remedy. Requests for this type of relief, while boilerplate, embody a central tenet of notice pleading under the federal rules, even post *Twombly* and *Iqbal*—once a plaintiff plausibly states his cause of action, subsequent discovery may reveal facts that bring to light previously unknown but nevertheless appropriate redress.

*Id.* at *2, *2 n.3. The same assessment applies here. As noted, Penn State challenges the

"unspecified" nature of the declaratory judgment sought, not a purported failure to allege sufficient

facts that could support a grant of declaratory relief. Def.'s Mem. in Supp. Mot. to Dismiss at 26-

27 (Doc. No. 5-2). Absent a challenge to the sufficiency of allegations to support such relief, the

Court rejects Penn State's invitation to dissect Ms. Cohn's requested relief.

## CONCLUSION

For the foregoing reasons, Penn State's motion to dismiss is granted in part and denied in

part. In sum, the Court dismisses Ms. Cohn's claims asserting a violation of Title III of the ADA,

breach of contract, and promissory estoppel. Ms. Cohn's claims alleging violations of Title II of the ADA and § 504 of the Rehabilitation Act and misrepresentation survive. An appropriate order, which recognizes that Ms. Cohn may endeavor to amend her pleadings,[10] follows.

BY THE COURT:

**GENE E.K. PRATTER**
**UNITED STATES DISTRICT JUDGE**

---

[10]    If Ms. Cohn chooses to amend her pleadings, an "amended complaint supersedes the [preceding complaint] and renders [the preceding complaint] of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading." *West Run Student Housing Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 171 (3d Cir. 2013) (internal quotations omitted).