**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DARAN COHN,** | : | |
| *Plaintiff* | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | |
| **THE PENNSYLVANIA STATE UNIV.,** | : | **NO. 19-2857** |
| *Defendant* | : | |

**MEMORANDUM**

PRATTER, J.                                                                                    MAY 28, 2020

**INTRODUCTION**

Daran Cohn challenges what she alleges were The Pennsylvania State University's unlawful actions concerning her enrollment in its graduate Physician Assistant Program. She poses a number of different claims and theories. Ms. Cohn alleges that Penn State failed to provide her the reasonable accommodations she needed as an individual suffering with Attention Deficit Hyperactivity Disorder and anxiety and then retaliated against her after she repeatedly brought this failure to Penn State's attention. Ms. Cohn also asserts that Penn State breached a contract with her by failing to follow its own policies and procedures. Alternatively, Ms. Cohn asserts that she reasonably relied on Penn State's contract-like promise to follow its own policies as well as its communications concerning her eligibility to graduate. Finally, Ms. Cohn asserts negligent and intentional misrepresentation claims based on Penn State's communications concerning her eligibility to graduate.

After the Court dismissed some of Ms. Cohn's claims as presented in her First Amended Complaint, the Court granted her leave to file a second amended complaint. Pursuant to Federal Rule of Civil Procedure 12(b)(6), Penn State now moves to dismiss some of the claims Ms. Cohn

1

asserts in her Second Amended Complaint. Specifically, Penn State seeks to dismiss various claims for punitive damages, compensatory damages, and injunctive and declaratory relief as well as her breach of contract, promissory estoppel/detrimental reliance, and negligent/intentional misrepresentation claims. For the following reasons, the Court dismisses the challenged relief sought, Ms. Cohn's breach of contract claim, and her promissory estoppel/detrimental reliance claims based on Penn State's communications concerning her eligibility to graduate. However, the Court denies Penn State's motion to dismiss Ms. Cohn's promissory estoppel/detrimental reliance claims based on Penn State's purported promise to abide by its policies and her misrepresentation claims.

## Procedural History

Initially proceeding *pro se*, Ms. Cohn filed her first complaint and then an amended complaint. Penn State moved to partially dismiss Ms. Cohn's First Amended Complaint pursuant to Federal Rule of Procedure 12(b)(6). The Court granted the motion to dismiss concerning Ms. Cohn's claims asserting a violation of Title III of the ADA, breach of contract, and promissory estoppel and denied the motion to dismiss as to her claims alleging intentional and/or negligent misrepresentation and violations of Title II of the ADA and § 504 of the Rehabilitation Act. The Court granted Ms. Cohn leave to amend to try to cure the deficiencies in her First Amended Complaint.

Ms. Cohn has since retained an attorney and filed her Second Amended Complaint asserting a variety of claims against Penn State. They are:

- Count I: Discrimination in violation of § 504 of the Rehabilitation Act;

- Count II: Discrimination in violation of Title II of the ADA;

- Count III: Retaliation in violation of the Rehabilitation Act;

- Count IV: Retaliation in violation of the ADA;

- Count V: Breach of Contract;

- Count VI: Promissory Estoppel;

- Count VII: Negligent Misrepresentation;

- Count VIII: Intentional and/or Fraudulent Misrepresentation; and

- Count IX: Detrimental Reliance.

Ms. Cohn seeks a declaratory judgment stating that Penn State violated the ADA and the Rehabilitation Act; injunctive and equitable relief prohibiting Penn State from engaging in discriminatory and/or retaliatory practices; compensatory damages for student loans incurred, tuition and living expenses, lost back pay, and lost future pay; punitive damages; attorneys' fees; expert witness fees; and costs. Penn State now moves to partially dismiss Ms. Cohn's Second Amended Complaint.

## BACKGROUND

### I. Penn State's Physician Assistant Program

Ms. Cohn is an individual with disabilities, namely she suffers from Attention Deficit Hyperactivity Disorder and anxiety. Ms. Cohn alleges that she is qualified to participate in Penn State's Physician Assistant Program and was accepted into the Program in 2015.

Penn State, a public university and place of public accommodation which receives federal funding, offers a two-year graduate Physician Assistant Program. According to Ms. Cohn, Penn State requires students to complete the Program within 3 years. Each year of enrollment in the Program costs approximately $60,000. Ms. Cohn was enrolled in and attended the Program for approximately 2 ½ years, at an approximate cost of $160,000.

Ms. Cohn asserts that the terms and requirements of the Program are set forth in Penn State's Student Handbook, the Physician Assistant Student Clinical Education Manual, the Program website, Penn State's Financial Aid Satisfactory Academic Policy, and an "academic contract."[1]  Sec. Am. Compl. at ¶ 24 (Doc. No. 29).  Pursuant to the Program policies, a student must complete 3 semesters of classes during the first year of participation in the Program.  Students must then complete 3 semesters of clinical rotations during the second year of the Program.  Each semester during the clinical portion of the Program consists of three 5-week long clinical rotations.

Ms. Cohn alleges that the Handbook, the Manual, and the Financial Aid Policy, collectively, provide safeguards to protect students from incurring unnecessary student debt in the event they are unlikely to succeed in the Program.  According to Ms. Cohn, the Handbook provides that students are prohibited from proceeding to the clinical year of the Program if they are not in good academic standing.  She also alleges that the Handbook states that a student is permitted to take a leave of absence and that Penn State's Academic Review Committee will approve an action plan to assist the student upon his or her return from leave.  Ms. Cohn asserts that, pursuant to the Handbook, Penn State must also make grades available on an electronic database so that students are apprised of their academic standing and status.

According to Ms. Cohn, "[t]he Manual is a guide for students to progress through the clinical year of the Program[,]" *id.* at ¶ 38, which details "the clinical education overview, clinical education policies and procedures, an overview of and expectation for teaching and learning in the clinical setting, and course learning outcomes[,]" *Id.* at ¶ 39.  Ms. Cohn also alleges that the

---

[1]      Although Ms. Cohn's Second Amended Complaint briefly mentions the Program website and "academic contract," the substance of Ms. Cohn's pleadings is based on Penn State's alleged failure to abide by its own policies and procedures set forth in the Handbook, the Manual, and the Financial Aid Policy.

Handbook and the Manual mandate that a student maintain at least a 3.0 grade point average in order to remain in the Program.

According to Ms. Cohn, the Financial Aid Policy governs a student's eligibility to receive federal student aid funds based on satisfactory academic progress. In particular, the policy allegedly prohibits Penn State from disbursing financial aid in the event the student has failed one of his or her courses or is otherwise not in good academic standing. Pursuant to the policy, Penn State purportedly can only issue financial aid to a student in poor academic standing after the student obtains a passing grade in the course that he or she failed.

Ms. Cohn alleges that Penn State made it clear that it expects students enrolled in the Program to adhere to the requirements set forth in the Handbook, Manual, and Financial Aid Policy. In turn, Ms. Cohn alleges that she reasonably believed that Penn State would itself adhere to the mandates of its own policies and procedures.

## II.     Ms. Cohn's Enrollment in and Progression Through the Academic Portion of the Program[2]

Ms. Cohn began the Program during the summer 2015 semester. Before beginning her first semester, she notified Penn State of her disabilities, requested reasonable accommodations, and provided the necessary medical documentation. However, Penn State allegedly failed to provide Ms. Cohn with accommodations or to engage in any interactive process with her in an attempt to satisfy her request for accommodations during her first year in the Program.

Due to Penn State's purported failure to accommodate her, Ms. Cohn says she failed one of her courses during the summer 2015 semester, which in turn lowered her grade point average below 3.0. Ms. Cohn alleges that due to the course failure and drop in her grade point average,

---

[2]     Pursuant to Ms. Cohn's Second Amended Complaint, the Court understands the academic year to begin during the summer semester and end during the spring semester.

Penn State's policies barred additional student loans to her until she passed the course she failed and improved her grade point average. Nevertheless, Penn State continued disbursements of Ms. Cohn's student loans. According to Ms. Cohn, she reasonably relied on Penn State's decision to permit her to receive additional student loans when deciding whether to accrue more student loan debt.

Due to what she alleges was Penn State's failure to provide accommodations, Ms. Cohn struggled in the Program during the fall 2015 and spring 2016 semesters as well. Ms. Cohn alleges that, unbeknownst to her, she was not in good academic standing during this time period. Even so, Penn State allowed Ms. Cohn to proceed to the clinical portion of the Program.

### III.    Ms. Cohn's Enrollment in and Progression Through the Clinical Portion of the Program

Ms. Cohn began the clinical portion of the Program during the summer 2016 semester. Penn State distributed financial aid to Ms. Cohn for the summer 2016, fall 2016, and spring 2017 semesters while she participated in the clinical portion of the Program.

Despite her requests for accommodations for the 2016-2017 academic year, Penn State allegedly again failed to provide Ms. Cohn accommodations during the summer 2016 semester. With no accommodations in place, Ms. Cohn struggled to keep up with the academic requirements set forth in the Handbook and Manual. Penn State then allegedly forced Ms. Cohn to take a leave of absence mid-way through the 2016 summer semester. During her leave of absence, Ms. Cohn was prevented from finishing her courses. Penn State did not refund Ms. Cohn financial aid for the courses she was unable to finish due to her leave of absence. Ms. Cohn returned from leave in time for the last clinical rotation of the summer 2016 semester. Penn State did not approve an action plan to assist Mr. Cohn upon her return. Ms. Cohn continued to accrue financial aid disbursements after returning to the Program.

6

Soon after Ms. Cohn's fall 2016 semester tuition payment was paid through her financial aid disbursement, Penn State dismissed her from the Program.  Ms. Cohn was informed that her dismissal was based on her summer 2016 semester grades, her academic probation during the 2015-2016 academic year, and her failure to maintain good academic standing.  However, after discussing the dismissal with Penn State, she was permitted to continue in the Program.  According to Ms. Cohn, Penn State staff allegedly told her that her academic probation during the 2015-2016 academic year would not affect her ability to graduate from the Program.  Based on this representation, Ms. Cohn continued in the Program, incurring more financial aid debt.

Concerning her accommodations for this time period, Penn State allegedly agreed to provide Ms. Cohn reasonable accommodations at the end of the summer 2016 semester. Specifically, Penn State agreed to provide Ms. Cohn a quiet, isolated setting for exams; a quiet, isolated setting for taking notes during her clinical rotations; clinical placements near her home and support network; and a revised clinical schedule to accommodate her disabilities.  However, Penn State allegedly failed to provide Ms. Cohn a quiet, isolated setting for taking notes during her clinical rotations and "failed to timely provide Ms. Cohn with accommodations for her clinical placements, if at all."  *Id.* at ¶ 85.  As a result, Ms. Cohn was unable to begin her clinical rotations on time and fell behind on her work.  Despite Penn State allegedly delaying the start of her rotation, it did not provide Ms. Cohn with a revised clinical schedule, failed to inform Ms. Cohn's clinical instructors of her accommodations, and only sporadically provided her a quiet, isolated setting for exams.

On several occasions, the facilities were purportedly unstaffed and/or inaccessible when Ms. Cohn would appear at the pre-scheduled quiet, isolated location for exam taking.  As a result, Penn State allegedly prevented Ms. Cohn from timely completing scheduled exams.  Penn State

also did not allow Ms. Cohn to make up the exams.  Ms. Cohn claims she repeatedly complained about Penn State's refusal to provide reasonable accommodations to no avail.  Instead, Penn State and its staff assertedly retaliated against Ms. Cohn after she complained about the failure to accommodate her.  Following her efforts to obtain reasonable accommodations, Penn State allegedly (1) intimidated Ms. Cohn when she would attempt to enforce her accommodations; (2) forced her to disclose protected and confidential information to Penn State staff in an attempt to embarrass her; (3) refused to give her assignments and/or make it increasingly difficult for her to receive assignments; and (4) had its staff repeatedly discipline her for behaviors and/or conduct for which Penn State would not discipline non-disabled students.  Ms. Cohn's disability symptoms worsened as a result of Penn State's alleged failure to accommodate her and its retaliatory conduct.

According to Ms. Cohn, Penn State also failed to timely report her grades to the registrar and/or main campus or the federal financial aid lender facility during this time period.  As a result, Ms. Cohn continued to receive financial aid disbursements for the entirety of the 2016-2017 academic year.  Penn State disbursed Ms. Cohn's federal student loans for payment for the fall 2017 semester.  For the summer 2017 and spring 2018 semesters, Ms. Cohn obtained private loans instead of applying for federal student loans.

Penn State then allegedly forced Ms. Cohn to "take a leave of absence based on disabilities" during the summer 2017 semester.  *Id.* at ¶ 108.  Penn State staff also informed her that, upon her return from leave, she would be eligible for graduation in December 2017 if she achieved a 3.0 grade point average during the fall 2017 semester.  Although Ms. Cohn returned from leave before the start of the fall 2017 semester, Penn State apparently did not approve an action plan to assist her in her return.

According to Ms. Cohn, Penn State similarly failed to provide her reasonable accommodations during the fall 2017 and spring 2018 semesters. Ms. Cohn asserts that during this time period, Penn State only sporadically provided her with a quiet, isolated setting for taking exams; failed to provide a quiet, isolated setting for taking notes during her clinical rotations; failed to appropriately select and arrange her clinical placements; and never provided her a revised clinical schedule. Ms. Cohn allegedly again raised her concerns to Penn State regarding her accommodations to no avail. Penn State's failure to accommodate Ms. Cohn led to a worsening of the symptoms of her disabilities.

At the end of the spring 2018 semester, Ms. Cohn became aware that Penn State failed to report her grades dating from after the summer 2016 semester to at least November 22, 2017 to Penn State's registrar and/or main campus. In particular, Ms. Cohn's financial aid file did not document that she was on academic probation or otherwise failing to meet the Financial Aid Policy's grade requirements. The Program Director also allegedly reported incorrect dates of completion of Ms. Cohn's academic work to the registrar and/or main campus. Ms. Cohn alleges that Penn State intentionally refrained from reporting her grades in order to obtain further student loan disbursements. According to Ms. Cohn, if Penn State properly reported her grades, she would have not been permitted to receive a student loan disbursement, and thus would have not incurred additional student loan debt.

In May 2018, the Program Director informed Ms. Cohn that she was indeed on academic probation during the summer 2016, fall 2016, and spring 2017 semesters. With 1 ½ weeks remaining in her final semester, the Program Director also informed Ms. Cohn that she had to receive a 4.0 grade point average in her last rotation in order to graduate. Penn State again allegedly failed to provide appropriate examination accommodations during this semester. After

Ms. Cohn reported Penn State's alleged failure to accommodate her, the Program Director allegedly threatened Ms. Cohn that she would have to take the examination without any accommodations.

That same month, Ms. Cohn was informed that she was being dismissed from the Program and would not be able to graduate, in part because of her academic probation in 2015 and 2016. Ms. Cohn disputed her dismissal in accordance with Penn State's policies and procedures as set forth in the Handbook and/or Manual. Penn State allegedly denied Ms. Cohn's due process and appellate rights to dispute her dismissal.

### LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). However, "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted) (alteration in original). To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (citation and quotations omitted). In evaluating the sufficiency of a complaint, the Court adheres to certain well-recognized parameters. For one, the Court "must consider only those facts alleged in the

complaint and accept all of the allegations as true." *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *see also Twombly*, 550 U.S. at 555 (stating that courts must "assum[e] that all the allegations in the complaint are true (even if doubtful in fact)"). Also, the Court must accept as true all reasonable inferences emanating from the allegations and view those facts and inferences in the light most favorable to the nonmoving party. *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989); *see also Revell v. Port Auth. of N. Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010).

That admonition does not demand that the Court ignore or discount reality. The Court "need not accept as true unsupported conclusions and unwarranted inferences." *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000) (citations and internal quotation marks omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (explaining that a court need not accept a plaintiff's "bald assertions" or "legal conclusions") (citations omitted). If a claim "is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008).

## DISCUSSION

### I.    Claims for Punitive and Compensatory Damages for Counts I through VI, and IX and Injunctive and Declaratory Relief

Penn State argues that the Court should dismiss Ms. Cohn's claims for (1) punitive damages based on her discrimination and retaliation claims, her breach of contract claims, and her promissory estoppel/detrimental reliance claims; (2) compensatory damages for her retaliation claims; and (3) injunctive and declaratory relief. Ms. Cohn "concedes to the dismissal" of her

claims for punitive damages concerning her breach of contract,[3] promissory estoppel/detrimental reliance, and discrimination claims.  Pl.'s Response at 16-17  (Doc. No. 32).

Ms. Cohn similarly "stipulates to the dismissal" of punitive damages for her retaliation claims.  *Id.* at 17.  Despite conceding that "the weight of the district court decisions in this Circuit," have determined that "the applicable statutes do not permit *compensatory* damages in retaliation claims[,]" *id.* (emphasis added), Ms. Cohn only stipulates to the dismissal of her claim for *punitive* damages.  As both parties point out, the majority of courts in this Circuit interpret § 504 of the Rehabilitation Act and Title II of the ADA as not providing for punitive *or* compensatory damages for retaliation claims brought under the statutes.  *See, e.g.*, *Wilkie v. Luzerne Cnty.*, No. 14-462, 2014 WL 4977418, at *4 (M.D. Pa. Oct. 6, 2014) (holding after careful consideration that "§ 12203 does not make available compensatory damages for retaliation claims"); *Greieder v. Masonic Homes of the R.W. Grand Lodge*, No. 13-2376, 2014 WL 1632143, at *4 (E.D. Pa. Apr. 23, 2014) (concluding after careful consideration "that the language in the ADA does not permit the recovery of punitive or compensatory damages"); *Baker v. PPL Corp.*, No. 09-428, 2010 WL 419417, at *8 (M.D. Pa. Jan. 29, 2010) (holding that the ADA "does not provide for the recovery of compensatory and punitive damages in anti-retaliation claims brought under 42 U.S.C. § 12203"); *see also Cottrell v. Good Wheels*, No. 08-1738, 2009 WL 3208299, at *7 (D.N.J. Sept. 28, 2009) (noting that § 504 incorporates the ADA's anti-retaliation language).  Accordingly, the Court finds that Ms. Cohn's claims for compensatory damages regarding her retaliation claims should also be dismissed.

Given Ms. Cohn's concessions, stipulation, and the applicable case law, the Court grants Penn State's motion to dismiss as it pertains to Ms. Cohn's (1) claim for punitive damages based

---

[3]     As discussed below, the Court dismisses the entirety of Ms. Cohn's breach of contract claim.  *See infra* pp. 13-14.

on her discrimination and retaliation claims, breach of contract claim, and promissory estoppel/detrimental reliance claims; (2) claim for compensatory damages based on her retaliation claims; and (3) claim for injunctive and declaratory relief.

## II.    Breach of Contract Claim

As it did in its first motion to dismiss, Penn State again argues that the university policies and procedures Ms. Cohn relies on to substantiate her breach of contract claim cannot create an enforceable contract between Ms. Cohn and Penn State.  In addition, Penn State also argues that Ms. Cohn fails to plead that she complied with her obligations as set forth in the purported contract.

To prove a breach of contract claim, "Pennsylvania law requires that a plaintiff allege: '(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages.'"  *Hopkins v. GNC Franchising, Inc.,* 288 F. App'x 871, 873 (3d Cir. 2008) (quoting *CoreStates Bank, N.A. v. Cutillo,* 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)).[4]

According to Ms. Cohn, Penn State breached contractual provisions set forth in the Handbook, the Manual, and the Financial Aid Policy.  More specifically, Ms. Cohn contends that Penn State breached its contractual obligations to inform Ms. Cohn that she was not in good academic standing, to bar the distribution of her student loans when she was not in good academic standing, and to timely report her grades to the registrar or the financial aid lender.

As the Court already explained in its memorandum dismissing her first breach of contract claim, Ms. Cohn cannot base her breach of contract claim on a public university's written policies

---

[4]    The courts in this District often split the first factor of the Third Circuit Court of Appeals' test into two parts: "(1) the existence of a valid and binding contract to which the plaintiff and defendants were parties [and] (2) the contract's essential terms." *Flynn v. La Salle Univ.,* No. 97-4542, 1998 WL 599512, at *4 (E.D. Pa. Sept. 9, 1998) (citing *Gundlach v. Reinstein,* 924 F. Supp. 684, 688 (E.D. Pa. 1996)).  The courts also add an additional factor, "that plaintiff complied with the contract's terms," making the test for a breach of contract a five-part test.  *Id.*

and procedures. Courts in Pennsylvania have "declined to construe the student handbook of a public university as a contract between the public university and the student." *Tran v. State Sys. of Higher Educ.*, 986 A.2d 179, 183 (Pa. Commw. Ct. 2009) (citing *Crabtree v. California Univ. of Pennsylvania*, 606 A.2d 1239, 1240 n. 3 (Pa. Commw. Ct. 1990)); *see Borrell v. Bloomsburg Univ.*, 955 F. Supp. 2d 390, 408 (M.D. Pa. 2013); *Bradshaw v. Pennsylvania State Univ.*, No. 10-4839, 2011 WL 1288681, at *2 (E.D. Pa. Apr. 5, 2011) ("If Pennsylvania State University is a public university, then the plaintiff cannot state a contract claim pursuant to a university handbook."); *cf. Reardon v. Allegheny College*, 926 A.2d 477, 481 (Pa. Super. Ct. 2007) ("The relationship between a *privately funded* college and a student has traditionally been defined in this Commonwealth as strictly contractual in nature.") (citations omitted) (emphasis added).

Even though the Court explained the invalidity of treating the policies[5] and materials at issue as contracts in its memorandum opinion dated February 12, 2020, Ms. Cohn does not attempt to argue how she could conceivably overcome this dispositive hurdle to her breach of contract claim. Accordingly, the Court dismisses Ms. Cohn's breach of contract claim.[6]

## III.   Promissory Estoppel and Detrimental Reliance Claims

In her Second Amended Complaint, Ms. Cohn brings two separate counts to set forth her promissory estoppel and detrimental reliance claims. "'Detrimental reliance is another name for promissory estoppel.'" *Burton Imaging Grp. v. Toys "R" Us, Inc.*, 502 F. Supp. 2d 434, 439 (E.D.

---

[5]    As the Court already noted in its prior memorandum, it is unclear where the Financial Aid Policy Ms. Cohn relies on is published. Regardless, the same bar against holding a public university accountable for allegedly violating a policy published within a student handbook would necessarily apply to an alleged violation of a policy published outside of its student handbook.

[6]    Because Ms. Cohn has again failed to plead the existence of a legally enforceable contract, the Court need not address the merits of the parties' arguments concerning whether Ms. Cohn plausibly pleaded that she complied with the requirements of the legally unenforceable contract.

Pa. Aug. 8, 2007) (quoting *Travers v. Cameron Cnty. Sch. Dist.*, 544 A.2d 547, 550 (1988)).

Accordingly, the Court addresses both claims in tandem.

"Promissory estoppel is an equitable remedy traditionally used to enforce a promise in the absence of bargained-for consideration." *W. Chester Univ. Found. v. MetLife Ins. Co. of Conn.*, 259 F. Supp. 3d 211, 222 (E.D. Pa. 2017) (citing *Bull Int'l, Inc. v. MTD Consumer Grp., Inc.*, 654 F. App'x 80, 100 (3d Cir. 2016)); *see Cornell Narbeth, LLC v. Borough of Narbert*, 167 A.3d 228, 239 (Pa. Commw. Ct. 2017) ("[P]romissory estoppel provides an equitable remedy to enforce a 'contract-like promise that would be otherwise unenforceable under contract law principles.'") (quoting *Peluso v. Kistner*, 970 A.2d 530, 532 (Pa. Commw. Ct. 2009)).  Promissory estoppel permits the court to enforce a party's promise "where (1) the promisor makes a promise that he reasonably expects to induce action or forbearance by the promisee, (2) the promise does induce action or forbearance by the promisee, [and (3)] injustice can only be avoided by enforcing the promise." *Carlson v. Arnot-Ogden Memorial Hosp.*, 918 F.2d 411, 416 (3d Cir. 1990) (citing *Cardmone v. Univ. of Pittsburgh*, 384 A.2d 1228, 1233. (Pa. Super. Ct. 1978)).  "These factors are strictly enforced to guard against the 'loose application' of promissory estoppel." *Cornell Narbeth*, 167 A.3d at 239 (quoting *Peluso*, 970 A.2d at 533).

To establish a promissory estoppel claim, there must exist "an express promise between the promisor and the promise"—"a 'broad or vague implied promise' will be deemed insufficient." *MRO Corp. v. Humana Inc.*, 383 F. Supp. 3d 417, 424 (E.D. Pa. 2019); *see C & K Petroleum Prods., Inc. v. Equibank*, 839 F.2d 188, 192 (3d Cir. 1988) ("Promissory estoppel would be rendered meaningless if . . . detrimental reliance [was] based on the alleged existence of [] a broad and vague implied promise.") (citation omitted); *Constar, Inc. v. Nat'l Distribution Ctrs., Inc.*, 101 F. Supp. 2d 319, 324 (E.D. Pa. 2000) ("An implied promise is insufficient to support a claim for

promissory estoppel.").    Rather, the promise must indicate the intent of the parties with

"'reasonable certainty.'"  *MRO Corp.*, 383 F. Supp. 3d at 423 (citing *Ankerstjerne v. Schlumberger*

*Ltd.*, No. 03-3607, 2004 WL 1068806, at *5 (E.D. Pa. May 12, 2004), *aff'd*, 155 F. App'x 48 (3d

Cir. 2005)).  *Ankerstjerne*, 155 F. App'x at 51 (finding statement by employing manager that

plaintiff should have been paid overtime and that manager "would get it taken care of . . . per the

terms of [employee's] compensation plan" was "simply too vague and indefinite to constitute a

'promise' for purposes of promissory estoppel").

 In the count pleading promissory estoppel, Ms. Cohn asserts that Penn State and/or its

agents "made promises to [Ms. Cohn] on multiple occasions, including but not limited to that [she]

was eligible to graduate despite receiving certain grades."  Sec. Am. Compl. at ¶ 172 (Doc. No.

29). In the count pleading detrimental reliance, Ms. Cohn similarly alleges that Penn State and/or

its agents "made promises to [her] including but not limiting to [her] ability to graduate, the effect

of past classes on graduation, and that [Penn State] was following the mandates of the Handbook,

the Manual, and the Financial Aid Policy in reporting [Ms. Cohn's] grades."  *Id.* at ¶ 189.  Ms.

Cohn asserts that she relied on these promises when she obtained additional financial aid and paid

her tuition.

 When addressing the allegations set forth in Ms. Cohn's First Amended Complaint, the

Court dismissed Ms. Cohn's promissory estoppel claim based on Penn State's purported "promise"

that she "was on track to graduate".  Feb. 12, 2020 Mem. at 22 (Doc. No. 25).  The Court reasoned:

> Penn State's update concerning Ms. Cohn's academic standing is
> not a promise, let alone an express promise.  Informing a student
> that they are currently on track to graduate does not equate to
> promising that student that she or he will indeed graduate in the
> future.

*Id.*

16

Here, Ms. Cohn's newly pleaded reliance on Penn State's statement that she was "eligible to graduate despite receiving certain grades" fares no better as the basis for a plausible promissory estoppel claim.  Sec. Am. Compl. at ¶ 172 (Doc. No. 29.  Informing students before they have completed all of their coursework that they are eligible to graduate is not a promise, express or otherwise, that they will actually graduate.  Similarly, Ms. Cohn's vague references to Penn State's "promises" regarding her "ability to graduate" and "the effect of past classes on graduation" do not actually articulate what she alleges she was promised.  *Id.* at ¶ 189.  The Court can reasonably infer that Ms. Cohn is simply referring to Penn State's purported statements concerning her eligibility to graduate at a particular point in time, not a promise that she would, in fact, graduate.

In her response, Ms. Cohn does not defend her position that statements concerning her eligibility to graduate constitute a contract-like promise.  Instead, she exclusively focuses on Penn State's alleged failure to adhere to the policies set forth in its Handbook, Manual, and Financial Aid Policy as contract-like promises forming the basis of her claims.  In particular, she contends that, in enforcing its own policies, Penn State should have prevented her from advancing to the clinical portion of the Program and should have prohibited Penn State from allowing the disbursement of financial aid funds.

First, Penn State argues that the Court ought not consider Penn State's policies as the basis of her promissory estoppel/detrimental reliance claims because Ms. Cohn is impermissibly attempting to amend her pleadings through her responsive briefing.  However, Ms. Cohn did allege in her Second Amended Complaint that her detrimental reliance claim was in part based on Penn State's promise to abide by the policies set forth in the Handbook, Manual, and Financial Aid Policy.  Although the pleadings set forth under the counts alleging promissory estoppel and detrimental reliance are not particularly descriptive, the Court finds that the facts alleging Penn

17

State's purported failure to follow its own policies are indeed included elsewhere in her Second Amended Complaint.

Second, Penn State argues that Ms. Cohn fails to plead anything more than a "broad, non-specific statement[] of general applicability" to set forth this basis for her promissory estoppel/detrimental reliance claims. Def.'s Mem. in Supp. of Mot. at 7 (Doc. No. 33). However, an alleged promise to prohibit a student in poor academic standing from proceeding with the Program—and incurring more debt in order to do so—*is* a specific "promise." It calls for the university to take a specific action in the face of a specific circumstance. Thus, it is plausible that such a promise could be deemed, at least at this early stage in the litigation, a reasonably certain "contract-like promise."

Third, Penn State argues that even if its commitment to abide by its own policies is considered a promise, Ms. Cohn failed to plausibly plead that her reliance on such a purported promise was reasonable. Penn State argues that it was unreasonable for Ms. Cohn to rely on Penn State to prohibit her from taking out more loans and advancing through the Program because she pleaded that she failed one course and was below a 3.0 grade point average during the summer 2015 semester, that Penn State placed her on academic probation in 2015 and 2016, that she was twice forced to take a leave of absence, and that Penn State sought to dismiss Ms. Cohn but ultimately permitted her to remain in the Program during the fall 2016 semester.

At this early stage in the litigation, the Court finds that Ms. Cohn's pleadings plausibly allege her reasonable reliance on the "promise" that Penn State would follow its own policies to prohibit her from advancing through the Program without taking the requisite steps necessary to improve her academic standing and, in turn, prevent her from incurring additional student loans. Construing all inferences in favor of Ms. Cohn, it is plausibly reasonable that she believed that,

despite her own knowledge that she was struggling academically and her desire to stay in the Program, Penn State would ultimately follow its own safeguards put in place to protect its students from pursuing a degree that he or she may have tremendous difficulty obtaining.[7]

In sum, the Court finds that Ms. Cohn's promissory estoppel/detrimental reliance claims based on her asserted reliance on Penn State's promise that Penn State would abide by its own policies and procedures survives the motion to dismiss stage. However, the Court dismisses Ms. Cohn's promissory estoppel/detrimental reliance claims to the extent that they are based on Penn State's statements concerning her eligibility to graduate.

## IV.   Intentional and Negligent Misrepresentation Claims[8]

Finally, Penn State challenges Ms. Cohn's intentional and negligent misrepresentation claims. A successful negligent misrepresentation claim "requires proof of (1) a misrepresentation of a material *fact;* (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation." *Bennett v. Itochu Intern., Inc.*, 682 F. Supp. 2d 469, 480 (E.D. Pa. 2010) (citing *Bortz v. Noon*, 729 A.2d 555, 560 (Pa. 1999)). A successful intentional misrepresentation claim, on the other hand, requires "(1) A representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5)

---

[7]     Even so, the Court is aware that evidence considered in later stages of this litigation may certainly demonstrate that Ms. Cohn's reliance on Penn State's alleged promise to abide by its own policies was, in fact, unreasonable. Whether Ms. Cohn will ultimately prevail with what is essentially an argument that Penn State should have saved her from herself, or, stated differently, Penn State's arguably good deed cannot go unpunished is not for the Court to determine today.

[8]     In its first motion to dismiss, Penn State exclusively argued that Ms. Cohn's misrepresentation claims were time-barred. Accordingly, this is the first instance in which the Court is assessing the plausibility of Ms. Cohn's misrepresentation allegations.

justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *Brimmeier v. Pa. Turnpike Comm'n*, 147 A.3d 954, 962 (Pa. Commw. Ct. 2016) (citing *Bortz*, 729 A.2d at 560). In sum, a negligent misrepresentation differs from intentional misrepresentation in that to commit negligent misrepresentation, "the speaker need not know his or her words are untrue, but must have failed to make reasonable investigation of the truth of those words." *Id.* (citing *Gibbs v. Ernst*, 647 A.2d 882, 891 (Pa. 1994)).

In separately pleaded negligent misrepresentation and intentional misrepresentation claims, Ms. Cohn alleges that Penn State "made misrepresentations and/or omissions of material fact to [Ms. Cohn], including but not limited to the status of [Ms. Cohn]'s grades, accommodations, and graduation." Sec. Am. Compl. at ¶¶ 177, 182 (Doc. No. 29). Penn State argues that Ms. Cohn's pleadings are too vague to put Penn State on notice of the basis of her misrepresentation claims and, in any event, do not allege that Penn State actually made a false statement.

In her response, Ms. Cohn argued that her misrepresentation claims are based on, "among other things[,]" her allegation that despite Penn State first telling her that she could graduate in December 2017 if she achieved a 3.0 grade point average, Penn State later told her during the end of the spring 2018 semester that she was not eligible to graduate. Pl.'s Resp. at 22 (Doc. No. 32). Penn State argues that these allegations fail to allege that Penn State stated a falsehood.[9] Admittedly, it is unclear how Penn State's statement regarding what Ms. Cohn needed to do in order to graduate in December 2017 would be deemed "false" in the face of Penn State's later statement concerning Ms. Cohn's eligibility to graduate in the spring of 2018. Moreover, the pleadings comprising the counts setting forth Ms. Cohn's misrepresentation claims are

---

[9] Penn State also argued that Ms. Cohn is attempting to alter her pleadings through her briefing. Because the allegations Ms. Cohn relies on are indeed pleaded in her Second Amended Complaint, the Court rejects this argument.

rudimentary at best. Even so, the Court finds that other provisions in her Second Amended Complaint plead at least one plausible false statement of fact to form the basis of her misrepresentation claims.

When discussing her dismissal in the fall of 2016, Ms. Cohn alleges that "[Penn State] staff told Ms. Cohn that her academic probation during the 2015-2016 academic year would not affect her ability to graduate from the Program[.]" Sec. Am. Compl. at ¶ 79 (Doc. No. 29). Once Ms. Cohn was actually dismissed from the Program in May 2018, however, Ms. Cohn was allegedly "informed that the reason for her dismissal was due, in part, to her academic probation in 2015 and 2016." *Id.* at ¶ 137. Thus, Penn State's alleged initial representation that her prior academic probation would not impact her ability to graduate could plausibly be considered a falsehood if her eventual dismissal was indeed impacted by her academic probation during the 2015-2016 academic year. Surely, the entirety of Ms. Cohn's second amended complaint provides Penn State with "more than labels[,]" "conclusions[,]" or "a formulaic recitation of the elements" concerning her misrepresentation claims. *Twombly*, 550 U.S. at 555. Therefore, the Court denies Penn State's request to dismiss Ms. Cohn's misrepresentation claims.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Penn State's motion to dismiss. Specifically, the Court dismisses Ms. Cohn's claims for (1) punitive damages based on Ms. Cohn's discrimination and retaliation claims, her breach of contract claim, and her promissory estoppel/detrimental reliance claims; (2) compensatory damages for her retaliation claims; (3) injunctive and declaratory relief; (4) breach of contract; and (5) promissory estoppel/detrimental reliance claims based on Penn State's communications concerning Ms. Cohn's eligibility to graduate. Moreover, permitting Ms. Cohn yet another opportunity to amend

her pleadings in an attempt to fix the deficiencies described in this Memorandum would prove futile. *Phillips*, 515 F.3d at 236.  However, the Court denies Penn State's motion to dismiss as it pertains to Ms. Cohn's misrepresentation claims and her promissory estoppel/detrimental reliance claims based on Penn State's alleged promise to abide by its own policies.  An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

22